# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2011

No. 09-40872

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE GUADALUPE HERNANDEZ-GALVAN,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before DeMOSS, BENAVIDES, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Jose Guadalupe Hernandez-Galvan appeals his judgment of conviction and sentence for illegal reentry in violation of 18 U.S.C. § 1326. Specifically, he challenges the district court's conclusion that his prior North Carolina conviction for attempted common-law robbery is for a "crime of violence," requiring a 16-level increase under the Sentencing Guidelines. Because Hernandez raises only a theoretical possibility—rather than a realistic probability—that the North Carolina offense would criminalize conduct falling outside the generic, contemporary definition of attempted robbery, we AFFIRM.

No. 09-40872

I.

Hernandez was charged in a multi-count indictment with conspiracy to possess with intent to distribute marijuana, aiding and abetting and possession with intent to distribute marijuana, and having been found unlawfully present in this country following a prior deportation, which was subsequent to an aggravated felony conviction. A jury acquitted Hernandez of the two drug offenses. Hernandez then pleaded guilty to the illegal reentry count without the benefit of a plea agreement.

In preparation for Hernandez's sentencing, the probation officer compiled a Presentence Investigation Report. The report assigned Hernandez a base offense level of eight pursuant to U.S.S.G. § 2L1.2(a). Sixteen levels were added pursuant to § 2L1.2(b)(1)(A)(ii) based on Hernandez's prior North Carolina conviction for attempted common-law robbery. After receiving a three-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, Hernandez had a total offense level of 21. Hernandez scored a total of nine criminal history points and was placed in Criminal History Category IV. Thus, the report concluded that Hernandez's advisory sentencing range under the Guidelines should be 57 to 71 months. U.S.S.G. Ch. 5, Pt. A.

Hernandez objected to the report, in pertinent part, on the grounds that the 16-level enhancement pursuant to § 2L1.2(b)(1)(A)(ii) was not warranted because his North Carolina conviction for attempted common-law robbery did not meet the Guidelines's definition of a "crime of violence." The district court overruled Hernandez's objection. In addition, the district court found by a preponderance of the evidence that Hernandez had committed the offenses that he had been acquitted of at trial. The district court sentenced Hernandez to an above-Guidelines sentence of 84 months of imprisonment, as well as a three-year term of supervised release. This appeal followed.

No. 09-40872

## II.

In reviewing the reasonableness of a defendant's sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court's "interpretation or application of the Sentencing Guidelines" is reviewed *de novo*, while its factual findings are reviewed for clear error. *Id.* Thus, this court considers *de novo* whether a defendant's prior conviction qualifies as a "crime of violence" within the meaning of the Guidelines. *United States v. Sanchez-Ruedas*, 452 F.3d 409, 412 (5th Cir. 2006).

A defendant convicted of illegal reentry who also has a prior conviction for a "crime of violence" receives a 16-level upward adjustment under the Guidelines. U.S.S.G. § 2L1.2(b)(1)(A)(ii). "Crime of violence" is defined in the application notes:

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id.* § 2L1.2 cmt. n.1(B)(iii). In other words, an offense qualifies as a crime of violence if it falls within an enumerated category or within the physical-force provision. Inchoate variants of these offenses also qualify: "Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." *Id.* § 2L1.2 cmt. n.5.

No. 09-40872

To determine whether an offense falls within an enumerated category, this court employs a "common sense approach" based on the "generic, contemporary meaning" of the terms used in the Guidelines. *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008) (internal quotation marks omitted). As a guide to contemporary meaning, the court consults such sources as "the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries." *United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006). If the prior offense of conviction sweeps more broadly than this generic definition, that conviction does not fall within the enumerated category, regardless of the label a state attaches to the underlying offense. *See Moreno-Florean*, 542 F.3d at 449. The mere theoretical possibility that the two definitions might lead to different outcomes is insufficient, however:

> [I]n our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

To determine whether an offense falls within the physical-force provision, the court employs a more "formalistic, element-by-element approach." *United States v. Carbajal-Diaz*, 508 F.3d 804, 808 (5th Cir. 2007). This analysis focuses on the "elements of the offense, rather than the facts underlying the conviction." *Moreno-Florean*, 542 F.3d at 449.

Under either approach, however, if the statute defining the offense of conviction "contains a series of disjunctive elements, this court may look beyond

No. 09-40872

the statute to certain records made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction." *Id.* "These records are generally limited to the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." *United States v. Murillo-Lopez*, 444 F.3d 337, 340 (5th Cir. 2006) (internal quotation marks omitted).

## III.

As Hernandez concedes, this court has already decided that common-law robbery under North Carolina law qualifies as a "crime of violence" under the enumerated category of robbery.[1]  Even so, he argues that attempted common-law robbery does not qualify because North Carolina's courts have interpreted attempt liability more broadly than its generic, contemporary meaning.  The government counters that any difference is merely semantic and that, in practice, North Carolina applies their attempt standard in conformity with the modern approach.  This court confronted a similar question in *United States v. Ellis*,[2] 564 F.3d 370, 378 (5th Cir. 2009), but declined to answer it on plain-error review.  In order to resolve this question, we must first determine the generic,

---

[1] North Carolina defines robbery as "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Parker*, 369 S.E.2d 596, 600 (N.C. 1988).  In an unpublished opinion, this court defined the generic offense of robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving [immediate] danger to the person." *United States v. Moore*, 223 F. App'x 422, 423 (5th Cir. 2007) (per curiam) (unpublished) (alteration in original) (internal quotation marks omitted).  Utilizing this generic definition, the court determined that the North Carolina offense was substantially similar to the enumerated offense of robbery and, therefore, a "crime of violence." *Id.* at 424.

[2] Although *Ellis* involved interpretation of "crime of violence" under U.S.S.G. § 4B1.2, rather than § 2L1.2, the two sections define the term similarly.  Both sections identify robbery as an enumerated category and both contain a physical-force provision, but § 4B1.2 adds an additional catch-all provision for conduct involving use of explosives or which, "by its nature, presented a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2 cmt. n.1.

contemporary meaning of attempt, and then compare it with North Carolina's definition of attempt.

## A.

To avoid punishing bad thoughts, attempt liability has long required that the defendant have taken "some act . . . towards carrying out the [criminal] intent." *United States v. Resendiz-Ponce*, 549 U.S. 102, 106 (2007). "Precisely what kind of act is required," however, is not easily determined from examining "the language which has traditionally been used by courts and legislatures." 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.4(a), at 218 (2d ed. 2003). The traditional phrases offer little guidance as to where the line is to be drawn between attempt and mere criminal intent: "a step toward the commission of the crime"; "an act in part execution of the intent"; "a direct movement toward the commission of the offense"; "the commencement of the consummation"; or "some appreciable fragment of the crime." *Id.* § 11.4(a), at 219 (collecting cases). The modern trend is a shift toward the "substantial step" test from the Model Penal Code, which is now the majority view among the states and federal courts, including the Fifth Circuit. *Id.* § 11.4(e), at 226; *see also Sui v. Immigration & Naturalization Serv.*, 250 F.3d 105, 116 (2d Cir. 2001) (noting that the Model Penal Code test is "the most commonly used 'attempt' definition today"). This "substantial step" test thus represents the generic, contemporary act requirement for attempt liability.

The Model Penal Code's "substantial step" approach asks whether a person "purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Model Penal Code § 5.01(1)(c). The act or omission, moreover, must be "strongly corroborative of the actor's criminal purpose." *Id.* § 5.01(2). Use of the phrase

"substantial step" suggests "that the conduct must be more than remote preparation." *United States v. Mandujano*, 499 F.2d 370, 377 (5th Cir. 1974). Thus, because the objective act must independently "evidence commitment to the criminal venture," requiring a substantial step "prevents the conviction of persons engaged in innocent acts on the basis of a mens rea proved through speculative inferences, unreliable forms of testimony, and past criminal conduct." *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir. 1976).

North Carolina has not codified the crime of attempt, but the Supreme Court of North Carolina has defined its elements: "(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Miller*, 477 S.E.2d 915, 921 (N.C. 1996). In a frequently quoted passage, the court further explained the state's "overt act" requirement:

> In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof. Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.

*Id.* (citing *State v. Price*, 184 S.E.2d 866, 869 (N.C. 1971)). In *State v. Bell*, the court noted that "whenever the design of a person to commit a crime is clearly shown, slight acts in furtherance of the design will constitute an attempt." 316 S.E.2d 611, 616 (N.C. 1984). Although *Bell* has never been overruled, only one other North Carolina case, from the intermediate appellate court, has repeated

the "slight acts" language.  *See State v. Henderson*, 642 S.E.2d 509, 514 (N.C. Ct. App. 2007).

Nevertheless, and contrary to the government's suggestion, the "slight acts" language in *Bell* does not appear to be an aberration in North Carolina's attempt jurisprudence.  Although the quoted language appears in only two cases, it is consistent with other discussions of the state's overt act requirement. *Bell* begins by reciting the elements of attempt—the same familiar elements discussed in *Miller*: "intent . . . and an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense." *Bell*, 316 S.E.2d at 616.  Against this backdrop, *Bell*'s statement about the sufficiency of even a slight act must necessarily refer to any slight act beyond mere preparation.  Even without consulting *Bell*, a reader could come to the same conclusion by examining the discussion of the act requirement in *Miller*, quoted above.  *Miller* explains the act must not be "merely preparatory," but may be even the "first . . . step . . . after the preparations are made." *Miller*, 477 S.E.2d at 921.  Therefore, under North Carolina's precedents, any overt act, however slight, beyond mere preparation satisfies the act requirement if it is done for the purpose of committing the underlying offense.

## B.

We now compare these two act requirements.  As discussed, the state requires any slight act beyond mere preparation.  In contrast, the generic contemporary test requires a substantial step, which this court has said amounts to something more than mere preparation. *See Mandujano*, 499 F.2d at 377.  If the "something more" is merely a slight act, then the two tests are essentially equivalent.  At least one plausible reading of *Mandujano* suggests that this is so, as the court recognized in *Ellis*. *See Ellis*, 564 F.3d at 374

(noting that *Mandujano* "seems to equate the substantial step test with *any* act that crosses the line from preparation to execution").

On the other hand, the differing rationales underlying the two formulations suggest that there might be a difference, at least in theory. Interpreting the "substantial step" test, this court required that "the objective acts performed, without any reliance on the accompanying mens rea, mark the defendant's conduct as criminal in nature." *Oviedo*, 525 F.2d at 885. This interpretation is consistent with the Model Penal Code's requirement that the act be "strongly corroborative of the actor's criminal purpose." In contrast, *Bell* suggests that North Carolina's act requirement exists primarily to cast additional light on the actor's mental state: "Because the reason for requiring an overt act is that without it there is too much uncertainty as to what the intent actually was, whenever the design of a person to commit a crime is clearly shown, slight acts in furtherance of the design will constitute an attempt." *Bell*, 316 S.E.2d at 616 (internal quotation marks omitted). Thus, to the extent the "substantial step" test requires an act that provides strong evidence of the actor's mental state, it might not criminalize some slight acts that go beyond mere preparation, even where North Carolina would.

Even assuming that these differing rationales create a theoretical distinction between a "substantial step" and a "slight act beyond mere preparation," however, Hernandez has failed to demonstrate that this difference is significant as a practical matter. To establish the required "realistic probability" of different outcomes, "he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193. Hernandez has not identified even one North Carolina case that he believes

No. 09-40872

would have been decided differently under the "substantial step" approach.[3] Similarly, the facts of his own case do not fall outside the reach of the "substantial step" test. The indictment for his prior North Carolina conviction charges that he "unlawfully, willfully and feloniously did attempt to steal, take and carry away another person's property, United States currency, from the person and presence [of a named individual], by means of an assault upon him consisting of putting him in fear of bodily harm by the threat of violence."[4] Threatening violence in a person's presence is surely a "substantial step" toward robbing the individual—an act beyond mere preparation which strongly corroborates the defendant's criminal purpose.

Accordingly, we hold that, while Hernandez has certainly raised the "theoretical possibility" that North Carolina's attempted common-law robbery offense would sweep more broadly than the generic, contemporary meaning of the enumerated offense of attempted robbery, he has not shown a "realistic probability" that it would do so.[5]  *Id.*  Indeed, he has not even attempted to

---

[3] The government, on the other hand, identifies a decision which, it claims, demonstrates that North Carolina's test is essentially applied in the same manner as the "substantial step" test. In that decision, *State v. Jacobs*, 230 S.E.2d 550 (N.C. Ct. App. 1976), the court reversed a defendant's conviction for attempted robbery because it concluded that the overt act requirement had not been met. The defendant had entered a hardware store and, after standing in front of the cashier and staring for about a minute, adjusted his coat to reveal a pistol in his waistband. *Id.* at 551. He did not threaten or attempt to use the gun, or demand money or property from the cashier. *Id.* In overturning the conviction, the court held that the "evidence raises a suspicion that defendant may have intended to commit a robbery or other crime but falls short of showing an overt act in furtherance of an intent to rob." *Id.* at 551-52.

[4] Hernandez argued before the district court that the indictment does not reflect what he actually pleaded to under his plea agreement. He also claimed that his client was prepared to testify that the offense did not involve any persons, but rather a closed store. He presented no evidence to contradict the statements in the indictment, however. Moreover, he does not raise this argument on appeal.

[5] The Ninth Circuit reached a similar conclusion in *United States v. Saavedra-Velazquez*, 578 F.3d 1103 (9th Cir. 2009) when considering whether California's "slight acts" requirement for attempt liability is broader than the modern "substantial step" test. In

make such a showing. He does not discuss his own prior offense or identify any state decision that applied North Carolina law in a manner inconsistent with the "substantial step" test. Without such a showing, however, the definitions, standing alone, are too similar to create a "realistic probability" of different outcomes—especially in light of this court's statements in *Mandujano* suggesting that *any* act beyond mere preparation would amount to a substantial step. *See Ellis*, 564 F.3d at 374. Thus, his prior North Carolina conviction for attempted common-law robbery is an enumerated "crime of violence" under U.S.S.G. § 2L1.2, and the district court's Guidelines calculation was correct. In light of this holding, we need not decide whether the conviction is a "crime of violence" under the physical-force provision.

AFFIRMED.

---

deciding that it was not, that court noted that it had been "unable to identify—and Saavedra-Velazquez [had] not cited—any cases in which the *application* of the California test is inconsistent" with the "substantial step" test. *Id.* at 1108-09. In addition, the Ninth Circuit has considered attempt offenses of several other states, and has found that all of them correspond to the generic, contemporary meaning of attempt. *See, e.g.*, *United States v. Sarbia*, 367 F.3d 1079, 1082, 1086 (9th Cir. 2004) (considering Nevada's "slight act" language); *United States v. Taylor*, 529 F.3d 1232, 1234, 1237-38 (9th Cir. 2008) (considering Arizona's "any step" language).