**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 10, 2012

No. 10-20249

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOEL DAVID SANCHEZ,

Defendant–Appellant.

Appeal from the United States District Court for the
Southern District of Texas

Before SMITH, WIENER, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Joel David Sanchez challenges the forty-eight-month sentence that he received after pleading guilty to the crime of illegal reentry of a previously deported alien following a conviction for an aggravated felony offense, in violation of 8 U.S.C. § 1326(a) and (b)(2). He contends on appeal that the district court improperly calculated his Guidelines range by erroneously applying a sixteen-level crime of violence enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A). He also asserts that his sentence is procedurally unreasonable because the district court failed to explain its sentencing decision and is

No. 10-20249

substantively unreasonable because it is greater than necessary in light of the 18 U.S.C. § 3553(a) factors.  We affirm.

## I

Sanchez pleaded guilty to the crime of illegal reentry of a previously deported alien following a conviction for an aggravated felony offense, in violation of 8 U.S.C. § 1326(a) and (b)(2).  The Probation Office prepared a Presentence Investigation Report (PSR) that determined that, based on a total offense level of 21 and a criminal history category of II, Sanchez's advisory Guidelines range of imprisonment was forty-one to fifty-one months.  The PSR's calculation of Sanchez's offense level included application of the sixteen-level enhancement in U.S.S.G. § 2L1.2(b)(1)(A), which applies to a defendant convicted of illegally reentering the United States after removal who was previously deported or unlawfully remained in the United States after "a conviction for a felony that is . . . (ii) a crime of violence."[1]  The PSR based its application of this enhancement on Sanchez's 1995 Texas state conviction for attempted sexual assault of a child.

Sanchez filed written objections to the PSR's application of the § 2L1.2(b)(1)(A) crime of violence enhancement.  Among his objections, Sanchez contended that his 1995 conviction could not support the enhancement because Texas's statute defining criminal attempt criminalizes conduct outside the scope of generic attempt.  Sanchez also argued that his Texas conviction could not support the crime of violence enhancement because under Texas law, the age of consent for sexual activity is seventeen, whereas the generic age of consent is sixteen.  Sanchez also filed a sentencing memorandum to which he attached exhibits that he requested the district court consider as evidence of mitigating factors in imposing his sentence.  The exhibits included letters from employers

---

[1] U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2L1.2(b)(1)(A) (2009).

No. 10-20249

attesting to Sanchez's work ethic and character, letters from Sanchez's wife and mother explaining that Sanchez only returned to the United States to help raise his sons and assist his ailing mother, and certificates from various Bible study courses that Sanchez had attended.

During the sentencing hearing, the district court overruled Sanchez's objections to the PSR and adopted the findings and recommendations of the PSR as its own. Sanchez then requested a below-Guidelines sentence of twenty-four to thirty months. He based this request on a number of factors that he believed justified a reduced sentence. He pointed to the nature and circumstances surrounding his return to the United States, the fact that his Texas conviction for the attempted sexual assault of a child had occurred fifteen years earlier, the fact that prior employers had submitted letters attesting to his dependability and work ethic, and his renewed religious faith and commitment.

The Government requested a sentence in the middle of the advisory Guidelines range calculated in the PSR. The Government pointed to the nature of Sanchez's attempted sexual assault of a child conviction and the fact that Sanchez had previously been deported and had then returned to the United States. The district court ultimately sentenced Sanchez to a term of forty-eight months of imprisonment. Sanchez now appeals. We have jurisdiction over his appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

Sanchez challenges his sentence on three grounds. First, he argues that the district court miscalculated the applicable Guidelines range by erroneously applying the § 2L1.2(b)(1)(A) crime of violence enhancement. Second, he claims that the district court procedurally erred when it failed to explain its sentencing decision adequately. Third, he challenges the substantive reasonableness of his sentence. We address these issues in turn.

No. 10-20249

The Guidelines provide in § 2L1.2(b)(1)(A) that a defendant convicted of illegally reentering the United States after removal, in violation of 8 U.S.C. § 1326, is subject to a sixteen-level enhancement of his base offense level if he was previously deported or unlawfully remained in the United States after "a conviction for a felony that is . . . (ii) a crime of violence."[2]  The Guidelines also provide that an attempt to commit an offense that, if completed, would be a crime of violence also qualifies as a crime of violence.[3]

Sanchez was convicted in Texas in 1995 of attempted sexual assault of a child, in violation of Texas Penal Code sections 22.011(a)(2) and (c)(1),[4] and

---

[2] U.S.S.G. § 2L1.2(b)(1)(A).

[3] *Id*. § 2L1.2 cmt. n.5.

[4] In 1995, Texas Penal Code section 22.011(a) and (c) provided, in pertinent part:

> (a) A person commits an offense if the person:
>
>> (1) intentionally or knowingly:
>>
>>> (A) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent; . . .
>>>
>>> (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; . . .
>>
>> (2) intentionally or knowingly:
>>
>>> (A) causes the penetration of the anus or female sexual organ of a child by any means; . . .
>>>
>>> (C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
>>>
>>> (D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; . . .
>
> (c) In this section,
>
>> (1) "Child" means a person younger than 17 years of age who is not the spouse of the actor.

15.01(a).  The Texas indictment, to which he pled guilty, alleged that Sanchez, on October 30, 1994:

> did then and there unlawfully, intentionally, with the specific intent to commit the offense of SEXUAL ASSAULT-CHILD of [complainant's name], hereafter styled the Complainant, do an act, to-wit: BY GETTING ON TOP OF THE COMPLAINANT AND UNBUTTONING THE COMPLAINANT'S PANTS, AND EXPOSING HIS SEXUAL ORGAN, which amounted to more than mere preparation that tended to but failed to effect the commission of the offense intended.

The district court concluded that Sanchez's prior conviction for this offense was a "crime of violence" within the meaning of § 2L1.2(b)(1)(A)(ii), and increased the base offense level by 16.  Sanchez's crime of illegal reentry occurred in September of 2009, and the district court applied the 2009 Guidelines.

There is no contention before us that under the 2009 Guidelines, the Texas offense of attempted sexual assault of a child had "as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of the definition of "crime of violence" of this Guideline provision.[5]  Instead, the Government contends that Sanchez's 1995 Texas conviction for attempted sexual assault of a child qualifies as a crime of violence because that crime constitutes an attempt to commit the enumerated offenses of "statutory rape" and "sexual abuse of a minor."[6]

Sanchez maintains in his appeal that his Texas conviction for attempted sexual assault of a child is not a crime of violence because the elements of the Texas "attempt" statute do "not satisfy the generic, contemporary definition of attempt."  Sanchez raised this objection in the district court.  We review de novo

---

[5] U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[6] *Id*. ("'Crime of violence' means any of the following offenses under federal, state, or local law: . . . statutory rape, sexual abuse of a minor. . . .").

whether a prior conviction constitutes a crime of violence within the meaning of the Guidelines.[7]

## A

The Guidelines do not define "attempt." We therefore "'employ a common-sense approach and define the term according to its generic, contemporary meaning.'"[8] We "should rely on a uniform definition, regardless of the 'labels employed by the various States' criminal codes.'"[9]

In determining whether a prior conviction is an enumerated offense and therefore constitutes a crime of violence, we use a "common sense approach."[10] We determine "whether a prior conviction constitutes an enumerated offense as that offense is understood in its ordinary, contemporary, [and] common meaning."[11]

Ultimately, "[i]f the state definition for an offense is broader than the generic definition, a conviction under that state's law cannot serve as a predicate for the [crime of violence] enhancement."[12] Importantly, the defendant must show more than a "mere theoretical possibility" that the statute of conviction criminalizes conduct that does not fall within the ordinary meaning of the

---

[7] *United States v. Ortiz-Gomez*, 562 F.3d 683, 684 (5th Cir. 2009).

[8] *United States v. Rosas-Pulido*, 526 F.3d 829, 834 (5th Cir. 2008) (quoting *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 316 (5th Cir. 2007)).

[9] *United States v. Murillo-Lopez*, 444 F.3d 337, 339 (5th Cir. 2006).

[10] *United States v. Mungia-Portillo*, 484 F.3d 813, 816 (5th Cir. 2007).

[11] *Murillo-Lopez*, 444 F.3d at 339 (alteration in original) (internal quotation marks omitted).

[12] *United States v. Ellis*, 564 F.3d 370, 372 (5th Cir.), *cert. denied*, 130 S. Ct. 371 (2009); *see also United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006) ("When the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law."(internal quotation marks omitted)).

No. 10-20249

enumerated offense.[13] Rather, a defendant must "show a realistic probability" that the statute of conviction would in fact punish conduct falling outside of the offense's ordinary meaning.[14] As the Supreme Court explained in *Gonzales v. Duenas-Alvarez*:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.[15]

The crime of attempt generally consists of two elements, a *mens rea* requirement and an *actus reus* requirement.[16] The *mens rea* requirement for the crime of attempt is, in its most basic formulation, "an intent to commit some other crime."[17] Our system of laws does not criminalize bad thoughts,[18] however, and the *actus reus* requirement exists in order to ensure that a criminal

---

[13] *See United States v. Hernandez-Galvan*, 632 F.3d 192, 197 (5th Cir. 2011).

[14] *See United States v. Ramos-Sanchez*, 483 F.3d 400, 404 (5th Cir. 2007).

[15] 549 U.S. 183, 193 (2007); s*ee also Ramos-Sanchez*, 483 F.3d at 403-04 (applying *Duenas-Alvarez* in the § 2L1.2 context).

[16] 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.3 (2d ed. 2003) ("The crime of attempt consists of (1) an intent to do an act or to bring about a certain consequence which would in law amount to a crime; and (2) an act in furtherance of that intent.").

[17] *Id.*

[18] *See, e.g.*, *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) ("As was true at common law, the mere intent to violate a federal criminal statute is not punishable as an attempt unless it also is accompanied by significant conduct."); *id.* ("Not only does the word 'attempt' as used in common parlance connote action rather than mere intent, but more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements.").

No. 10-20249

defendant cannot be punished unless he undertakes some act in furtherance of his criminal intent. Jurisdictions often diverge over exactly where to draw the line between acts that do constitute attempt and acts that do not.[19] It is on this point that Sanchez builds his argument, claiming that Texas defines the acts sufficient to support an attempt conviction in such a manner as to criminalize conduct that would not support a conviction under the ordinary, contemporary, and common definition of attempt.

We have held that the generic, contemporary *actus reus* requirement for attempt is the Model Penal Code's "substantial step" test.[20] The substantial step test provides that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."[21] The Model Penal Code also provides that "[c]onduct shall not be held to constitute a substantial step . . . unless it is strongly corroborative of the actor's criminal purpose."[22] In addition, we have held "that the conduct [must] be more than 'mere preparation.'"[23]

---

[19] *See generally* LAFAVE at § 11.4.

[20] *United States v. Hernandez-Galvan*, 632 F.3d 192, 198 (5th Cir. 2011); *see also United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1107 (9th Cir. 2009); *Sui v. I.N.S.*, 250 F.3d 105, 116 (2d Cir. 2001) ("[T]he elements of intent and a substantial step toward commission set out in the Model Penal Code make up the most commonly used 'attempt' definition today.").

[21] MODEL PENAL CODE § 5.01(1).

[22] *Id.* at § 5.01(2); *see also United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974) ("A substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent.").

[23] *Mandujano*, 499 F.2d at 377.

No. 10-20249

Recently, in *United States v. Hernandez-Galvan*, we identified a purportedly unresolved issue with respect to the substantial step test.[24] We noted an apparent inconsistency between two of our own cases applying the substantial step test, *United States v. Mandujano*[25] and *United States v. Oviedo*.[26] We observed that one plausible reading of *Mandujano* suggests that the substantial step test only requires a "slight act" that "amounts to something more than mere preparation."[27] We noted that "[o]n the other hand," in *Oviedo*, "this court required that 'the objective acts performed, without any reliance on the accompanying *mens rea*, mark the defendant's conduct as criminal in nature.'"[28] Explaining that "[t]his [latter] interpretation is consistent with the Model Penal Code's requirement that the act be 'strongly corroborative of the actor's criminal purpose,'" we suggested that "to the extent the 'substantial step' test requires an act that provides strong evidence of the actor's mental state, it might not criminalize some slight acts that go beyond mere preparation."[29]

Our decisions in *Mandujano* and *Oviedo* are not inconsistent when it is recognized that the substantial step test requires an act that is *both* strongly corroborative of the actor's criminal purpose and more than mere preparation. That these are two separate requirements is a fact that we have consistently

---

[24] 632 F.3d at 199-200.

[25] 499 F.2d 370 (5th Cir. 1974).

[26] 525 F.2d 881 (5th Cir. 1976).

[27] *Hernandez-Galvan*, 632 F.3d at 199; *see also United States v. Ellis*, 564 F.3d 370, 374 (5th Cir. 2009) (noting that the definition of substantial step that we used in *Mandujano* "seems to equate the substantial step test with *any* act that crosses the line from preparation to execution").

[28] *Hernandez-Galvan*, 632 F.3d at 199 (quoting *Oviedo*, 525 F.2d at 885).

[29] *Id.* at 199-200.

acknowledged in our case law, both explicitly[30] and implicitly.[31]  Even our decision in *Mandujano* appears to acknowledge that the substantial step test includes these two distinct requirements when it observes that "[t]he requirement that the conduct be strongly corroborative of the firmness of the defendant's criminal intent also *relates* to the requirement that the conduct be more than 'mere preparation.'"[32]  In short, we believe that the potential inconsistency that we flagged in *Hernandez-Galvan* was more apparent than real.  Our prior case law makes clear that a "substantial step" must both (1) be an act strongly corroborative of the actor's criminal intent and (2) amount to more than mere preparation.

## B

We must determine whether the Texas statute under which Sanchez was convicted for attempted sexual assault of a child sweeps more broadly than the "substantial step" formulation of attempt.  In Texas a person is guilty of criminal attempt "if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[33]  "It is well established that the [Texas] attempt statute does not require that every act short of actual commission be accomplished in

---

[30] *See United States v. Brown*, 604 F.2d 347, 350 (5th Cir. 1979) (considering as separate questions whether the defendant's conduct "crossed the line from mere preparation" and "strongly corroborate[d] the firmness of his criminal intent and ma[d]e his conduct criminal in nature").

[31] *See United States v. Partida*, 385 F.3d 546, 560-61 (5th Cir. 2004) (noting that defendant's actions "constitute[d] sufficient evidence of substantial steps that moved past mere preparation, *and* were strongly corroborative of criminal intent" (emphasis added)).

[32] *United States v. Mandujano*, 499 F.2d 370, 377 (5th Cir. 1974) (emphasis added).

[33] TEX. PENAL CODE ANN. § 15.01(a); *see also Santellan v. State*, 939 S.W.2d 155, 162 n.10 (Tex. Crim. App. 1997).

order for one to be convicted of an attempted offense."[34]  Sanchez points to the difference in language between the Texas attempt statute's requirements and the substantial step test in order to support his claim that Texas criminalizes conduct that falls outside of the ordinary, contemporary, and common meaning of attempt.  He argues that imposing criminal liability for "an act amounting to more than mere preparation" criminalizes more conduct than the substantial step test.

If we were to look only to the literal terms of the Texas attempt statute, then arguably, there is a difference between "more than mere preparation" and the substantial step test, which requires not only that a defendant's acts amount to more than mere preparation, but also that those acts are strongly corroborative of the defendant's criminal intent.  But our determination of whether the Texas attempt statute criminalizes conduct that would not satisfy the substantial step test must turn on realistic probabilities, not theoretical possibilities.[35]  That the Texas statutory language differs from the substantial step test does not, in and of itself, establish that attempt in Texas does not constitute attempt under the Guidelines—the difference must be "significant as a practical matter."[36]

Sanchez has failed to direct us to a case in which a Texas court applied the Texas attempt statute to criminalize conduct that would not satisfy the substantial step test.  Sanchez has not demonstrated that as actually applied by a state court, the Texas attempt statute sweeps more broadly than the substantial step test for attempt.

---

[34] *Gibbons v. State*, 634 S.W.2d 700, 706 (Tex. Crim. App. 1982).

[35] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

[36] *United States v. Hernandez-Galvan*, 632 F.3d 192, 200 (5th Cir. 2011).

No. 10-20249

Sanchez points to the decision in *Laster v. State*.[37]  We are unpersuaded. In that case, the defendant was convicted of attempted aggravated kidnapping. The issues on appeal were whether there was legally sufficient evidence and factually sufficient evidence to prove that Laster *intended* to abduct an 8-year-old girl and secret her in a place where she was not likely to be found.[38]  The issue was *not* whether his actions in physically grabbing her were sufficient under the Texas attempt statute as "an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[39]  Nevertheless, the case is instructive.  The grabbing of the child in *Laster* would satisfy the substantial step test if intent were otherwise established.  Sanchez does not challenge the intent element of the Texas statutes under which he was convicted.

As recounted by the Texas Court of Criminal Appeals, the facts of the case were as follows:

> After buying eggs for their mother at a convenience store on January 30, 2005, B.T., who was eight, and her brother, who was ten, began to walk home.  While walking on the sidewalk, B.T. pushed a bicycle, and her brother walked beside her.  The children saw a man, carrying a closed umbrella, walking toward them.  To allow the man to pass, the children leaned against a fence next to the sidewalk.  Instead of passing by, the man grabbed B.T.'s arm. The man then put his arm around B.T.'s waist and tried to pull her away.  B.T. let go of the bicycle and yelled for help.  Her brother grabbed her hand, and a tug of war over B.T. ensued.  The man abruptly let go of B.T. when a driver honked the car's horn.  The man then continued to walk down the sidewalk toward the store.

---

[37] 275 S.W.3d 512 (Tex. Crim. App. 2009).

[38] *Id.* at 516; *id.* at 519.

[39] TEX. PENAL CODE ANN. § 15.01 (a) (West 1994).

No. 10-20249

The children ran home and told their mother that a man tried to take B.T.[40]

The man was ultimately identified as Tommy Laster, and he subsequently gave a written statement in which he acknowledged grabbing B.T.[41] He said in this statement that when he saw the girl and her brother, "voices in my head told me to grab the little girl. The voices were telling me to 'Get her, get her.'" He admitted grabbing her using his "right arm around her waist." A jury convicted him of both injuring a child and attempted aggravated kidnapping, but he only appealed the attempted aggravated kidnapping conviction.[42]

The Court of Criminal Appeals held that to prove attempted aggravated kidnapping, the State was required to prove that Laster "did 'an act amounting to more than mere preparation' with the specific intent to commit aggravated kidnapping."[43] The court then explained that "[a] person commits the offense of aggravated kidnapping if 'he intentionally or knowingly abducts another person' and commits an aggravating element."[44] The court observed that "'[a]bduct . . . includes two elements."[45] "First, the defendant must have restrained another, which is the *actus reus* requirement."[46] The court then discussed the *mens rea* requirement.[47]

---

[40] *Laster*, 275 S.W.3d at 515-16.

[41] *Id.* at 516.

[42] *Id.*

[43] *Id.* at 521.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* The Court of Criminal Appeals explained:

Second, the defendant must have had the specific intent to

No. 10-20249

Sanchez points to a dissenting opinion in *Laster*. That opinion, and the majority opinion's response to it, confirms that the issue on appeal was whether there was sufficient evidence of *intent* to commit aggravated kidnapping or instead, whether there was at most evidence of *intent* to steal the child's bicycle or sexually abuse her on the sidewalk.[48] The majority opinion concluded that there was a relationship between the act of grabbing the child and the defendant's intent. The court noted that when Laster grabbed the child around the waist and then tried to pull her away, her brother grabbed her arm and tried to pull her from Laster. Laster pulled back. The Texas court reasoned, "a rational factfinder can infer such an intent [to secret or hold the child in a place where she was unlikely to be found] when a defendant isolates a person from anyone who might be of assistance," and "that by pulling B.T. away from her brother, the only person available to help her, Laster intended to hold or secrete B.T. in a place where she was unlikely to be found."[49] Similarly, the court observed, "Laster continued to pull B.T. after her brother came to her aid. It was not until a driver honked the car's horn that Laster released B.T. A factfinder could reasonably infer from this evidence that Laster was planning to do more

> prevent liberation, which is the mens rea requirement. Secreting or holding another where he or she is unlikely to be found is part of the mens rea requirement of the offense—not the actus reus. This is an important distinction because the State is not required to prove that the defendant actually secreted or held another. Instead the State must prove that the defendant restrained another with the specific intent to prevent liberation by secreting or holding the person. The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found.

*Id.* (citations omitted).

[48] *Id.* at 517, 523; *id.* at 529 (COCHRAN, J., dissenting).

[49] *Id.* at 522.

14

than just steal her bike or molest her" on the spot.[50]  Evidence of intent was also present, the court reasoned, from Laster's statement "not only . . . that the voices in his head were telling him to 'grab the little girl,' but they were also telling him to '[g]et her, get her.'"[51]   The court continued,

> He confessed to restraining B.T. until he "saw the little boy next to her" and realized that he "needed to let go of her because she was a little girl and [he] knew how that would look to the cars going by." Even if this evidence was believed, a rational factfinder could infer that Laster formed the intent to take B.T. when he grabbed her and abandoned his plan when he realized that other people were witnessing his actions.  Indeed, the evidence presented at trial showed that Laster released B.T. when a driver honked the car's horn.  Rather than concluding that Laster released B.T. because he just wanted to grab her, viewed in the light most favorable to the verdict, the evidence showed that Laster formed the intent to take B.T. when he grabbed her and let go because he feared that he may be caught.[52]

The court emphasized at another juncture, "Laster did not simply grab at B.T.; he pulled her away."[53]

It is a tragic, nationally mourned fact that very young girls have been abducted in broad daylight from locations such as their homes, their yards, and neighborhood sidewalks, and then taken to an isolated or remote location where they have been sexually assaulted, brutally murdered, or both.  The act of a stranger grabbing a child around her waist and attempting to pry her from her ten-year-old brother during daylight hours on a public sidewalk would be a substantial step in committing aggravated kidnapping.  The Texas court's

---

[50] *Id.* at 523.

[51] *Id.* (alteration in original).

[52] *Id.* (alteration in original).

[53] *Id.*

decision in *Laster* does not support Sanchez's position that the Texas attempt statute is broader than the substantial step test.

## III

Sanchez argues that the sexual assault of a child under Texas law is not a crime of violence under § 2L1.2(b)(1)(A) because the relevant Texas statute, Texas Penal Code section 22.011, defines "child" as "a person younger than 17 years of age."[54] Sanchez maintains that the majority of jurisdictions in the United States set the age of consent for sexual activity at sixteen. Thus, he argues, the completed offense of sexual assault of a child under Texas law encompasses behavior beyond the ordinary, contemporary, and common definitions of the enumerated crimes of "statutory rape" or "sexual abuse of a minor."

Sanchez concedes that our precedents foreclose his argument, however. In *United States v. Alvarado-Hernandez*, we held that Texas Penal Code section 22.011(a)(2) "meets a common sense definition of 'statutory rape'" even though the statute defines "child" as a "person younger than the age of seventeen" for purposes of its proscription on consensual sexual intercourse with a child.[55] Additionally, we have also "held that the crime of sexual assault of a child under TEX. PENAL CODE § 22.011(a)(2) falls within the guideline enhancement as sexual abuse of a minor."[56] These precedents establish that the completed sexual assault of a child under Texas law is a "crime of violence" under § 2L1.2(b)(1)(A).

## IV

---

[54] TEX. PENAL CODE ANN. § 22.011(c)(1).

[55] 465 F.3d 188, 189 (5th Cir. 2006); see *also United States v. Castro-Guevarra*, 575 F.3d 550, 552 (5th Cir. 2009).

[56] *Castro-Guevarra*, 575 F.3d at 552-53 (citing *United States v. Martinez-Vega*, 471 F.3d 559, 562 (5th Cir. 2006)).

No. 10-20249

Sanchez challenges his sentence, asserting that the district court committed a "significant procedural error" by inadequately explaining its sentencing decision. Sanchez claims that he offered the district court a number of nonfrivolous arguments in support of a lower sentence and that the district court failed to address those arguments during sentencing. He notes in particular the district court's failure to explain why his family circumstances, the age of his prior conviction, his work ethic, and his renewed religious faith and commitment did not justify a lower sentence.

Under 18 U.S.C. § 3553(c), the sentencing court "shall state in open court the reasons for its imposition of the particular sentence." In *Rita v. United States*,[57] the Supreme Court noted the importance of § 3553(c)'s requirement and observed that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."[58] The Court further explained that whether a lengthy explanation of the sentencing judge's reasoning is necessary is a case-specific inquiry. According to the Court:

> [W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a)—that is, argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way—or argues for departure, the judge normally need say no more. . . .

---

[57] 551 U.S. 338 (2007).

[58] *Id.* at 356.

17

No. 10-20249

> Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments.  Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation. Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so.[59]

The Supreme Court held that the sentencing judge's explanation in *Rita* was "brief but legally sufficient."[60]  The Court specifically noted that the sentencing judge had considered the arguments and evidence and found the Guidelines range not "inappropriate" and a sentence at the bottom of that range to be "appropriate."[61]

In *United States v. Mondragon-Santiago*[62] and *United States v. Tisdale*,[63] we held that district courts committed procedural error under *Rita* when they failed to explain adequately their sentencing decisions as required by § 3553(c), even though the sentences were within the Guidelines.  In *Mondragon-Santiago*, we observed that "[w]hile sentences within the Guidelines require little explanation, more is required if the parties present legitimate reasons to depart from the Guidelines."[64]  We then noted the sparsity of the district court's explanation in that case:

> The total explanation of the court was as follows: "This is an Offense Level 21, Criminal History Category 3 case with guideline provisions of . . . 46 to 57 months.  The defendant is committed to

---

[59] *Id.* at 356-57 (internal citations omitted).

[60] *Id.* at 358.

[61] *Id.*

[62] 564 F.3d 357 (5th Cir. 2009).

[63] 264 F. App'x 403 (5th Cir. 2008) (unpublished).

[64] *Mondragon-Santiago*, 564 F.3d at 362 (internal citations and quotation marks omitted).

the Bureau of Prisons for a term of 50 months. He will be on supervised release for a term of three years . . . ."[65]

The district court's explanation in *Tisdale* was similarly sparse. As we described: "The [sentencing] court gave no indication it had considered [the parties'] § 3553(a) arguments or any of the § 3553(a) factors. Instead, it merely restated the guidelines' range and imposed a within-guidelines sentence for both defendants."[66] Sanchez relies on both *Mondragon-Santiago* and *Tisdale* to support his claim that the district court inadequately explained its sentencing decision in this case.

We hold that the district court did not fail to explain adequately Sanchez's sentence. The record in the instant case reflects that the district court had before it at the sentencing hearing the PSR and Sanchez's objections to the PSR, as well as Sanchez's sentencing memorandum that included the exhibits that Sanchez contends demonstrated his entitlement to a sentence below his Guidelines range. Sanchez reiterated his arguments for a sentence below the Guidelines range during the sentencing hearing. In rendering its sentencing decision, the district court noted that it had "considered the arguments of counsel" and concluded that "a sentence at the mid [sic] of the guideline range [was] needed to promote respect for the law and deterrence." We have previously upheld sentences under similar circumstances,[67] and the statement

---

[65] *Id.* at 364 (alterations in original).

[66] *Tisdale*, 264 F. App'x at 412.

[67] *See United States v. Gomez-Herrera*, 523 F.3d 554, 557 (5th Cir. 2008) (upholding a district court's sentencing decision in which the district court simply "noted [the defendant's] arguments for either a departure or variance and then stated that it was 'persuaded on the basis of the arguments made both here today and in the sentencing memorandum that I should not depart downward from the Guideline range'"); *United States v. Rodriguez*, 523 F.3d 519, 525 (5th Cir. 2008) (upholding a district court's sentencing decision in which the district court "adopted the findings, reasoning, and Guidelines calculations of the PSR" and "rejected [the Defendant's] request for a below-guidelines sentence and imposed a maximum guidelines sentence, expressly stating its belief that the sentence would 'adequately address the

No. 10-20249

of reasons in this case does not differ significantly from the statements that we determined were sufficient in those cases or from the explanation that the Supreme Court determined was adequate in *Rita*. The district court's explanation in this case was adequate.

## V

Finally, Sanchez challenges the substantive reasonableness of his sentence by claiming that it was greater than necessary in light of the § 3553(a) factors. The district court sentenced Sanchez to forty-eight months of imprisonment, a sentence that was within Sanchez's advisory Guidelines range of forty-one to fifty-one months. "A presumption of reasonableness applies to sentences that fall within the guidelines."[68] "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[69]

Sanchez argues that his sentence is substantively unreasonable because the district court placed too much emphasis on certain § 3553(a) factors—promoting respect for the law and deterrence—and too little emphasis on "the age of [Sanchez's prior] offense, [his] family circumstances, his employers' support, and his rehabilitation." He supports this claim by citing a case from one of our sister circuits, *United States v. Amezcua-Vasquez,*[70] in which the Ninth Circuit determined that a fifty-two month sentence imposed after an application of the § 2L1.2 crime of violence enhancement was substantively unreasonable "because of the staleness of [the defendant]'s prior conviction and

---

objectives of punishment and deterrence'").

[68] *United States v. Ruiz*, 621 F.3d 390, 394 (5th Cir. 2010).

[69] *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

[70] 567 F.3d 1050 (9th Cir. 2009).

his subsequent history showing no convictions for harming others or committing other crimes listed in Section 2L1.2."[71]    The defendant in that case had been convicted of his predicate offense twenty-five years prior to his deportation and subsequent unlawful reentry.

There are several reasons why *Amezcua-Vasquez* is distinguishable from this case.  The first and most obvious is that the Ninth Circuit, unlike this circuit, does not presume that a within-Guidelines sentence is reasonable.[72] Second, the *Amezcua-Vasquez* court limited its decision to the specific circumstances of that case, which involved a defendant who was convicted of his predicate offense in 1981, released from prison in 1984, and deported in 2006.[73] Here, Sanchez was convicted of his predicate offense in 1995.  He was first deported in November 1999, and he returned to the United States in March 2000.  He was in prison from April 2000 to March 2002, at which time he was again deported.  He did not return to the United States until November 2006. Thus, although it has been fifteen years since Sanchez's conviction, a considerable amount of that time was spent either outside of the United States or in custody.  He is not like the defendant in *Amezcua-Vasquez* who, after his release from prison in 1984, spent twenty-two relatively uneventful years living and working in this country before his first deportation.  Indeed, the prior conviction in *Amezcua-Vasquez* was so remote that it could not be counted in

---

[71] *Id.* at 1055.

[72] *Id.* ("[W]e . . . attach no presumption of reasonableness to the fact that Amezcua's sentence falls within the applicable Guidelines range.").

[73] *Id.* at 1052, 1058 ("The scope of our decision is limited. . . . We make no pronouncement as to the reasonableness of a comparable sentence were Amezcua's conviction more recent, the sentence resulting from the prior conviction more severe or 'the need . . . to protect the public from further crimes of the defendant' otherwise greater." (quoting 18 U.S.C. § 3353(a)(2)(c))).

21

No. 10-20249

calculating that defendant's criminal history points;[74] Sanchez's conviction was counted. *Amezcua-Vasquez* does not support Sanchez's argument.

Ultimately, Sanchez does not argue that the district court failed to account for factors that should receive weight or gave weight to improper factors, but instead takes issue with the district court's balancing of the § 3553(a) factors. We have noted, however, that "[a] defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence."[75] Moreover, "[t]he fact that an appellate court may have reasonably concluded that a different sentence was appropriate is not sufficient to justify reversal of the district court."[76] We hold that Sanchez's sentence is not substantively unreasonable.

*            *            *

AFFIRMED.

---

[74] *Id.* at 1052.

[75] *United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010).

[76] *United States v. York*, 600 F.3d 347, 361-62 (5th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).