# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2008

Charles R. Fulbruge III
Clerk

No. 06-41223

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

OSCAR ADAHIR ROSAS-PULIDO,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Oscar Adahir Rosas-Pulido, a citizen of Mexico, pled guilty to violating 8 U.S.C. § 1326(a) and (b) by being unlawfully present in the United States after having previously been deported. He appeals his sentence, contending the district court erred in applying a 16-level increase in calculating the advisory sentencing range after concluding that a prior conviction for unlawful sexual contact under Minnesota law was a crime of violence within the meaning of section 2L1.2(b)(1)(A)(ii) of the federal Sentencing Guidelines.[1] Rosas-Pulido also contends that the "felony" and "aggravated felony" provisions of 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional but acknowledges that this argument

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) (2005).

is foreclosed by Almendarez-Torres v. United States.[2] We vacate Rosas-Pulido's sentence and remand for re-sentencing because we agree that his prior Minnesota conviction was not a "crime of violence" within the meaning of the Guidelines.

I

Rosas-Pulido entered a plea of guilty to violating 8 U.S.C. §§ 1326(a) and (b) by being present in the United States after he had been deported. At the sentencing stage, the district court applied a 16-level enhancement under section 2L1.2(b)(1)(A)(ii) of the Sentencing Guidelines to the base offense level of 8, after concluding that Rosas-Pulido's prior, 2003 conviction in Minnesota for fourth degree criminal sexual conduct[3] was a crime of violence. The district court applied a two-level reduction for acceptance of responsibility, and an additional one point reduction pursuant to the Government's motion, which produced an offense level of 21. Rosas-Pulido's Criminal History Category of IV resulted in an advisory sentencing range of 57 to 71 months. The district court had found that Rosas-Pulido's prior 2005 conviction for illegal re-entry after deportation warranted an 8-level increase under section 2L1.2(b)(1)(C) but did not apply it, since the 16-level increase was greater.[4] The district court imposed a sentence of 57 months' imprisonment, two years of supervised release, and a $100 assessment.

II

We first consider Rosas-Pulido's argument that his 2003 Minnesota conviction was not a crime of violence. He raises two issues. The first is that the district court impermissibly relied on certain state records in concluding that he

---

[2] 523 U.S. 224 (1998).

[3] MINN. STAT. ANN. § 609.345 (West 2003).

[4] See U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1).

was charged and pled guilty to a violation of subsection (1)(c) of MINN. STAT. ANN. § 609.345, rather than to a violation of section 609.345 with no specification of any of its numerous subsections. Rosas-Pulido's second contention is that even if he was convicted of violating subsection (1)(c), it is not a crime of violence.

A

Section 2L1.2(b)(1)(A)(ii) directs that "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . (ii) a crime of violence" a 16-level increase should be applied.[5] A crime of violence is defined in that section to include "forcible sex offenses" and "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[6]

In determining whether a conviction was for a crime of violence, we "consider each aspect of [the offense's] definition, including alternative bases for conviction, and determine whether the least culpable act constituting a violation of that statute constitutes [a forcible sex offense] for purposes of U.S.S.G. § 2L1.2."[7] At least one subsection of the Minnesota statute at issue criminalizes conduct that would not be a crime of violence.[8] Accordingly, if Rosas-Pulido was

---

[5] Id. § 2L1.2(b)(1)(A)(ii) (2005).

[6] Id. § 2L1.2, cmt. n.1(B)(iii), providing:

"Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

[7] United States v. Gonzalez-Ramirez, 477 F.3d 310, 315-16 (5th Cir. 2007).

[8] See, e.g., MINN. STAT. ANN. § 609.345(1)(h) (criminalizing sexual contact when the actor is a psychotherapist, the complainant is a patient of that therapist, and the sexual contact occurred during a psychotherapy session or outside the psychotherapy session and an

convicted only of a violation of section 609.345, our inquiry would end. But the Government contends that the state records of Rosas-Pulido's 2003 conviction establish that he was convicted under subsection (1)(c) of section 609.345.

When a prior conviction was based on a guilty plea, courts may consider the charging document, any written plea agreement, a transcript of the plea colloquy, any explicit factual finding by the judge to which the defendant assented, or a comparable judicial record to determine the offense for which the defendant was convicted.[9] Rosas-Pulido contends that the district erred in considering the Minnesota state-court "complaint" against him because that complaint contains a police report describing alleged details of his offense, and it was signed by a police officer.

As a general matter, courts cannot consider police records in determining the nature of a prior conviction.[10] However, under Minnesota law, a complaint written by a police officer can be the charging document.[11] A complaint must be written and made under oath,[12] and with certain exceptions not pertinent here, proceedings on a Minnesota complaint will not go forward "without the written

---

[ongoing] therapist-patient relationship exists); see also United States v. Fernandez-Cusco, 447 F.3d 382, 387 (5th Cir. 2006) (concluding that a subsection of MINN. STAT. ANN. § 609.344 identical in wording to section 609.345(1)(c) "can be violated in ways not constituting forcible sex offenses," citing subsection (1)(h) of section 609.344, which is virtually identical to subsection (1)(h) of section 609.345).

[9] See Shepard v. United States, 544 U.S. 13, 26 (2005); United States v. Garza-Lopez, 410 F.3d 268, 274 (5th Cir. 2005).

[10] See Shepard, 544 U.S. at 19-23 (holding that a court may not look to police reports in deciding whether a crime is a "generic burglary" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)).

[11] MINN. R. CRIM. P. 2.01 ("The complaint is a written signed statement of the essential facts constituting the offense charged."); see also State v. Levie, 695 N.W.2d 619, 628 (Minn. App. 2005) ("The complaint is simply the charging document.").

[12] MINN. R. CRIM. P. 2.01 ("Except as provided in Rules 11.06 and 15.08, it shall be made upon oath before a judge or judicial officer of the district court, clerk or deputy clerk of court, or notary public.").

approval, endorsed on the complaint, of the prosecuting attorney authorized to prosecute the offense charged."[13] A factual account, which would commonly be considered a "police report," is contained in a complaint but is not evidence that can be considered at trial,[14] and courts should not consider it in determining the nature of a prior conviction. We may, however, consider the Counts stated in the complaint to determine the offense with which the defendant was charged.

The record in our case contains the Minnesota complaint against Rosas-Pulido. After the complaint's lengthy narration of facts, which is the equivalent of a "police report," there is a paragraph in bold print giving notice that intentional failure to appear for a court appearance may result in additional charges. Beneath that, four separate Counts are set forth, including Count 2, which charged Rosas-Pulido with "Criminal Sex Conduct–4th Degree–Force or Coercion, In Violation of: 609.245 Subd. 1(c), Penalty: 10 years and/or $20,000." Within Count 2, it was alleged that "[o]n or about October 15, 2003 and continuing through October 21, 2003, within the county of Carver, defendant engaged in sexual contact with another person [sic] used force or coercion to accomplish the sexual contact." At the end of the complaint, there is a signature of the officer making the complaint, and there is a signature beneath a printed heading stating "PROSECUTING ATTORNEY'S SIGNATURE." This document is the charging instrument under Minnesota law, and the district court did not err in considering it.

---

[13] Id. at 2.02 ("A complaint shall not be filed or process issued thereon without the written approval, endorsed on the complaint, of the prosecuting attorney authorized to prosecute the offense charged, unless such judge or judicial officer as may be authorized by law to issue process upon the offense certifies on the complaint that the prosecuting attorney is unavailable and the filing of the complaint and issuance of process thereon should not be delayed.").

[14] Levie, 695 N.W.2d at 628 ("The complaint is simply the charging document and, as a matter of fact, the standard criminal jury instructions will tell the jury that the complaint itself is not evidence.").

Additionally in the record is a document titled "Certificate of Conviction," which reflects that Counts 1 and 3 against Rosas-Pulido were dismissed but that he was convicted of Count 2. The "Certificate of Conviction" references "609.345 1(c)" as the "Statute/Ordinance" and beneath the heading "Offense Description" states "Criminal Sex Conduct – 4th Degree – Force or Coercion." Finally, the record contains a "Petition to Enter Plea of Guilty in Felony or Gross Misdemeanor Case Pursuant to Rule 15" that is signed by Rosas-Pulido and in which he acknowledges that he has been charged with the crime of "Crim. Sex. 4th – Count II." These documents are sufficient to establish that Rosas-Pulido was charged with and convicted of a violation of subsection (1)(c) of MINN. STAT. ANN. § 609.345. We turn to whether a conviction under this subsection is a crime of violence within the meaning of the Sentencing Guidelines.

B

In 2003, when Rosas-Pulido was convicted in Minnesota, MINN. STAT. ANN. § 609.345(1)(c) provided:

> A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the fourth degree if any of the following circumstances exist:
>                                      * * *
>        (c)  the actor uses force or coercion to accomplish the sexual contact.[15]

"Sexual contact" was defined to include

> the following acts committed without the complainant's consent . . . and committed with sexual or aggressive intent . . . (i) the intentional touching by the actor of the complainant's intimate parts, or . . . (iv) . . . the touching of the clothing covering the immediate area of the intimate parts.[16]

"Force" was defined as:

---

[15] MINN. STAT. ANN. § 609.345(1)(c) (West 2003).

[16] Id. § 609.341(11)(a).

the infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the actor against the complainant or another, which (a) causes the complainant to reasonably believe that the actor has the present ability to execute the threat and (b) if the actor does not have a significant relationship to the complainant, also causes the complainant to submit.[17]

"Coercion" was defined as:

[W]ords or circumstances that cause the complainant reasonably to fear that the actor will inflict bodily harm upon, or hold in confinement, the complainant or another, or force the complainant to submit to sexual penetration or contact, but proof of coercion does not require proof of a specific act or threat.[18]

If we were to consider only the Minnesota statute's definition of "force," it would indicate that a conviction for sexual contact accomplished by force qualifies as a "forcible sexual offense" within the meaning of U.S.S.G. § 2L1.2. However, the Minnesota Supreme Court upheld a conviction under MINN. STAT. § 609.345(1)(c) in circumstances that call such a conclusion into question.

In In re D.L.K., the defendant, "a 14-year-old juvenile, came up behind a female classmate at school, tapped her on the shoulder and, when she turned around, grabbed and pinched her breast hard enough to cause pain."[19] The Minnesota Supreme Court held "that the evidence in th[e] case of [the defendant's] sudden and painful grabbing and pinching of the victim's breast is sufficient use of force to accomplish sexual contact to sustain the trial court's conclusion that [the defendant's] conduct constitutes criminal conduct in the fourth degree in violation of Minn. Stat. § 609.345(c)."[20]

---

[17] Id. § 609.341(3).

[18] Id. § 609.341(14).

[19] 381 N.W.2d 435, 436 (Minn. 1986).

[20] Id. at 438 (applying the version of the statute in effect in 1984, which is identical to the version of subsection (1)(c) in effect in 2003).

The federal Sentencing Guidelines commentary does not define "forcible sex offense," so "we employ a common-sense approach and define the term according to its generic, contemporary meaning."[21] "For sources of generic, contemporary meaning, we consider, inter alia, the Model Penal Code, Professors LaFave and Scott's treatise, modern state cases, and dictionaries."[22] The term "forcible sex offense" is not commonly used in state statutes; however, in some states, force is not an element in offenses that involve sexual contact to which the actor knows the victim does not consent,[23] but force or the threat of force is an element in other sex offenses. The term "forcible sex offense" does not appear in the Model Penal Code,[24] LaFave's treatise,[25] or Black's Law Dictionary.

---

[21] United States v. Gonzalez-Ramirez, 477 F.3d 310, 316 (5th Cir. 2007).

[22] Id. (quoting United States v. Sanchez-Ruedas, 452 F.3d 409, 412 (5th Cir. 2006)) (quotation marks and alterations omitted).

[23] See, e.g., People v. Holwuttle, 155 P.3d 447, 449 (Colo. App. 2006) (distinguishing the offenses of "unlawful sexual contact," COLO. REV. STAT. § 18-3-404(2)(a) (2005), and "unlawful sexual contact" with force, COLO. REV. STAT. § 18-3-404(2)(b) (2005)); People v. Soto, 192 Misc.2d 161, 166-67 (N.Y. Crim. Ct. 2002) (explaining the differences among the offenses of: sexual abuse in the third degree, a violation of N.Y. PENAL LAW § 130.55 (McKinney 2002), that includes "mere touching without consent"; "forcible sexual touching," a violation of N.Y. PENAL LAW § 130.52 (McKinney 2002), that "includes such acts as 'squeezing, grabbing, or pinching of such person's sexual or other intimate parts,'" which are "all acts that can be accomplished without any forcible compulsion, as that term is defined in statutory and case law. Indeed, such acts frequently do not involve any forcible compulsion as that term is legally defined" but do involve "something more than mere touching without consent"; and "sexual abuse in the first degree", a violation of N.Y. PENAL LAW § 130.65[1] (McKinney 2002) that occurs when a person "subjects another person to sexual contact: 1. by forcible compulsion."); State v. Witwer, 856 P.2d 1183, 1185-86 (Ariz. Ct. App. 1993) (explaining that if "a man [] walks across the street and approaches a woman who he does not know and surprises her by touching her breast," he has committed sexual abuse by engaging in sexual contact "without consent" as that term is defined in ARIZ. REV. STAT. § 13-1401 (1990)); Commonwealth v. Grayson, 549 A.2d 593, 596 (Pa. 1988) (holding that sexual contact without the victim's consent constitutes "indecent contact" in violation of PA. STAT. ANN., tit. 18, § 3101).

[24] See MODEL PENAL CODE §§ 213.1-213.6 (2001) (defining categories of sexual offenses, but not using the phrase "forcible sex offense").

[25] See 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 17.1 (2d ed. 2003) (defining rape but not using the phrase "forcible sex offense.").

However, the Model Penal Code criminalizes "sexual contact,"[26] which means "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire."[27] This offense is defined without reference to the use of any force,[28] but certain other sex offenses have as an element force or threat of force.[29]

The Minnesota statute under which Rosas-Pulido was convicted can encompass conduct that is not a "forcible sex offense" because it can include conduct that is not "forcible" as that term is commonly understood.[30] For the same reasons, the offense for which Rosas-Pulido was convicted in 2003 does not

---

[26] See MODEL PENAL CODE § 213.4 (2001), providing:

A person who has sexual contact with another not his spouse, or causes such other to have sexual contact with him, is guilty of sexual assault, a misdemeanor, if:

(1) he knows that the contact is offensive to the other person; or
(2) he knows that the other person suffers from a mental disease or defect which renders him or her incapable of appraising the nature of his or her conduct; or
(3) he knows that the other person is unaware that a sexual act is being committed; or
(4) the other person is less than 10 years old; or
(5) he has substantially impaired the other person's power to appraise or control his or her conduct, by administering or employing without the other's knowledge drugs, intoxicants or other means for the purpose of preventing resistance; or
(6) the other person is less than [16] years old and the actor is at least [four] years older than the other person; or
(7) the other person is less than 21 years old and the actor is his guardian or otherwise responsible for general supervision of his welfare; or
(8) the other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him.

[27] Id.

[28] See id.

[29] See, e.g., id. §§ 213.1(a); 213.2(1)(a).

[30] See, e.g., In re D.L.K., 381 N.W.2d 435, 438 (Minn. 1986).

have "as an element the use, attempted use, or threatened use of physical force against the person of another."[31]

The Government argues that this case is controlled by United States v. Fernandez-Cusco.[32] However, that case dealt with a different Minnesota statute, MINN. STAT. ANN. § 609.344, as it existed in 1995. Section 609.344 criminalized sexual penetration,[33] as distinguished from the lesser offense of sexual contact, which is criminalized in section 609.345, the statute under which Rosas-Pulido was convicted.[34] In Fernandez-Cusco, the court did not examine any decisions construing the definition of "force" in the context of sexual penetration. It simply quoted the operative part of the statute, which was "the actor uses force or coercion to accomplish the penetration,"[35] and concluded, "[o]bviously, the use of force under the statute qualifies as a forcible sex offense."[36] The focus of the decision in Fernandez-Cusco was not the use of "force" but was whether accomplishing penetration by "coercion" constituted a forcible sex offense. The court concluded that penetration accomplished by "coercion" qualified.[37] Neither party to this appeal has cited any Minnesota authority holding that the "use[]

---

[31] U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

[32] 447 F.3d 382 (5th Cir. 2006).

[33] MINN. STAT. ANN. § 609.344 (1995) (providing that "A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if any of the following circumstance exist: . . . (c) the actor uses force or coercion to accomplish the penetration.").

[34] Id. § 609.345 (2003).

[35] Id.

[36] 447 F.3d at 387.

[37] Id. at 388 ("Pursuant to the above-quoted definition of 'coercion' under Minnesota law, the applicable subpart of the statute requires the use of physical force or a threat that the defendant will harm the victim, or hold the victim in confinement, or force the victim to submit to sexual penetration or contact.").

of force . . . to accomplish penetration" encompasses conduct that would not constitute a forcible sex offense within the meaning of the Guidelines. Because Fernandez-Cusco had no occasion to and did not analyze MINN. STAT. § 609.345(1)(c), and because the Minnesota Supreme Court has construed the latter statute to include the unwanted touching and pinching of a breast accomplished only by the force inherent in that touching and pinching,[38] the decision in Fernandez-Cusco is not controlling.

## III

Rosas-Pulido "makes the familiar contention that Almendarez-Torres v. United States, 523 U.S. 224 (1998), was incorrectly decided and that a majority of the Supreme Court would overrule it in light of the subsequent decision in Apprendi."[39] This argument is meritless. Indeed, Rosas-Pulido "acknowledges that existing precedent of the Supreme Court and this Court forecloses his arguments." As we recently wrote in United States v. Pineda-Arrellano, "[t]his court has patiently entertained the identical argument in countless cases. Now, however, a majority of the Supreme Court has reaffirmed Almendarez-Torres in James v. United States, 127 S.Ct. 1586 (2007)."[40] As Pineda-Arrellano makes clear, "this issue no longer serves as a legitimate basis for appeal."[41] This case was briefed in early 2007; therefore counsel lacked the guidance we provided in United States v. Pineda-Arrellano.[42]

\* \* \*

---

[38] See In re D.L.K., 381 N.W.2d 435, 438 (Minn. 1986).

[39] United States v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007), cert. denied, 128 S. Ct. 872 (2008).

[40] Id.

[41] Id.

[42] Id.

For the foregoing reasons, we VACATE Rosas-Pulido's sentence and REMAND for re-sentencing.