# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40114

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ADAN GARCIA-FIGUEROA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DENNIS and PRADO, Circuit Judges, and BROWN, District Judge.[*]

NANNETTE JOLIVETTE BROWN, District Judge:

Defendant Adan Garcia-Figueroa appeals his sentence after conviction for conspiracy to bring illegal aliens into the United States, bringing illegal aliens into the United States, and being unlawfully present in the United States following a prior deportation. Specifically, he challenges the district court's application of the United States Sentencing Guidelines ("U.S.S.G."), averring that the district court erred in its assessment of a 12-level crime of violence enhancement, and in its grouping of Garcia-Figueroa's counts of conviction. Because we conclude that the district court erred in its application

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 13-40114

of the grouping guidelines, we VACATE and REMAND the case for re-sentencing.

## BACKGROUND

On June 5, 2012, border patrol agents arrested Garcia-Figueroa near Hidalgo, Texas, after Garcia-Figueroa was caught smuggling between 12 and 17 illegal aliens across the Rio Grande in an inflatable raft. On September 6, 2012, Garcia-Figueroa was charged by a three-count superseding indictment with (1) conspiracy to bring illegal aliens into the United States, (2) bringing illegal aliens into the United States, and (3) being unlawfully present in the United States following a prior deportation. Following a three-day jury trial, Garcia-Figueroa was convicted on all three counts.

A probation officer compiled Garcia-Figueroa's presentence investigation report ("PSR"). The PSR grouped Counts 1 and 2 together, but determined that they were not groupable with Count 3. For Counts 1 and 2, the PSR assigned a base offense level of 12. U.S.S.G. § 2L1.1(a)(3). Additionally, the PSR applied three enhancements. First, it included a 3-level enhancement because the offense involved smuggling between 6 and 24 unlawful aliens. U.S.S.G. § 2L1.1(b)(2)(A). Second, the PSR added a 2-level enhancement because the defendant committed the offense after a conviction for a felony immigration and naturalization offense. U.S.S.G. § 2L1.1(b)(3)(A). Third, the PSR applied a 2-level enhancement for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person; specifically, the PSR noted that Garcia-Figueroa had placed the unlawful aliens in an overcrowded inflatable raft without life jackets in order to cross the Rio Grande. U.S.S.G. § 2L1.1(b)(6). Garcia-Figueroa's adjusted offense level for Counts 1 and 2 was 19. With respect to Count 3, Garcia-Figueroa's base offense level was 8. U.S.S.G. § 2L1.2(a). Additionally, the PSR recommended that Garcia-Figueroa's offense level be increased 12 levels

2

No. 13-40114

because his deportation occurred after his conviction of a crime of violence ("COV"). U.S.S.G. § 2L1.2(b)(1)(A)(ii). After applying a multiple-count adjustment, the PSR assigned Garcia-Figueroa a total offense level of 22. U.S.S.G. § 3D1.4. With a criminal history category of III, Garcia-Figueroa's recommended Guidelines range was 51 to 63 months' imprisonment.

Prior to sentencing, Garcia-Figueroa filed objections to the PSR, challenging the 2-level reckless-endangerment enhancement and the 12-level COV enhancement, and asserting that Count 3 should be grouped with Counts 1 and 2. The government also filed an objection, requesting that the Court assess a 2-level enhancement for obstructing or impeding the administration of justice because Garcia-Figueroa had given false testimony at his trial. U.S.S.G. § 3C1.1.

A sentencing hearing was held on January 23, 2013. The district court overruled Garcia-Figueroa's COV objection and grouping objection. With respect to Garcia-Figueroa's reckless endangerment objection, the district court declined to rule on the issue, characterizing it as "academic." Because Garcia-Figueroa's offense level for Count 3 was higher than his offense level for Counts 1 and 2, the district court reasoned that the total offense level would be 22 regardless of whether the reckless endangerment enhancement was applied to the smuggling offense. Finally, regarding the obstruction of justice enhancement, the district court granted the government's objection, finding that Garcia-Figueroa had given perjured, material testimony at trial.

Following its ruling on the objections, the court determined that Garcia-Figueroa had a total offense level of 24 and a criminal history category of III, giving him a Guidelines range of 63 to 78 months. The court sentenced Garcia-Figueroa to 70 months, within the Guidelines range. Garcia-Figueroa timely appealed.

No. 13-40114

## DISCUSSION

### I.

On appeal, Garcia-Figueroa first argues that the district court erred in its assessment of a 12-level COV enhancement based on his prior conviction in Florida state court for "attempted aggravated battery on [a] law enforcement officer with a law enforcement officer's firearm" in violation of Florida Statute §§ 784.07, 777.04, and 775.0875. U.S.S.G. § 2L1.2(b)(1)(A)(ii) provides for a 12-level enhancement where "the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." A COV is defined in the commentary to the Guidelines as:

> . . . any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). This court has "interpreted this provision to mean that a prior offense is a crime of violence if it: '(1) has physical force as an element, or (2) qualifies as one of the enumerated offenses.'" *United States v. Herrera*, 647 F.3d 172, 175 (5th Cir. 2011) (quoting *United States v. Gomez–Gomez*, 547 F.3d 242, 244 (5th Cir. 2008) (en banc), *superseded by regulation on other grounds, as stated in United States v. Diaz–Corado*, 648 F.3d 290, 294 (5th Cir. 2011)). Garcia-Figueroa argues that his prior conviction for attempted aggravated assault neither has physical force as an element, nor qualifies as an enumerated offense. Additionally, he contends that Florida's definition of "attempt" is too broad to constitute "attempt" under the Sentencing Guidelines. We review the district court's

4

characterization of a defendant's prior conviction as a COV *de novo*.[1] *United States v. Calderon–Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (en banc) (per curiam).

Looking at Garcia-Figueroa's prior crime, the judgment in Garcia-Figueroa's prior case indicates that he was convicted in 1991 for "attempted aggravated battery on [a] law enforcement officer with a law enforcement officer's firearm" in violation of Florida Statute §§ 784.07, 777.04, and 775.0875. Florida Statute § 784.07 provides that aggravated battery is classified as a first-degree felony when it is committed against a law enforcement officer. Fla. Stat. § 784.07(2)(d) (1991). However, § 784.07 does not list the specific elements of aggravated battery. Those elements are found in § 784.045, which provides that a person is guilty of aggravated battery "who, in committing battery: 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or 2. Uses a deadly weapon." Fla. Stat. § 784.045(1)(a) (1991). An individual commits battery if he "1. Actually and intentionally touches or strikes another person against the will of the other; or 2. Intentionally causes bodily harm to an individual." Fla. Stat. § 784.03(1)(a) (1991). The third statute mentioned in Garcia-Figueroa's judgment, Florida Statute § 775.0875, makes it a third-degree felony for a person to "without authorization, take[] a firearm from a

---

[1] At oral argument, this court questioned counsel on whether Garcia-Figueroa had sufficiently raised all aspects of his argument that his prior conviction does not qualify as a COV before the district court such that *de novo* review, rather than plain-error review, applies. *See generally United States v. Chavez–Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012) (explaining that this court will generally review the district court's characterization of a defendant's prior conviction as a COV *de novo*, but that if the defendant fails to make his objection to the Guidelines calculation sufficiently clear, the issue is considered forfeited, and this court reviews only for plain error). Both parties represented that *de novo* review is appropriate. Considering that we conclude that the district court did not err in its application of the COV enhancement, we apply *de novo* review without addressing whether Garcia-Figueroa made his objection to the Guidelines calculation sufficiently clear.

No. 13-40114

law enforcement officer lawfully engaged in law enforcement duties." Fla. Stat. § 775.0875(1) (1991). Finally, § 777.04 defines criminal attempt as "any act toward the commission" of an offense. Fla. Stat. § 777.04(1) (1991).

We first examine whether this prior conviction has physical force as an element of the offense. "This court employs a 'categorical approach' in determining whether an offense qualifies as a COV under § 2L1.2." *United States v. Dominguez*, 479 F.3d 345, 347 (5th Cir. 2007). That is, the court "examine[s] the elements of the offense, rather than the facts underlying the conviction or the defendant's actual conduct.*" Id.* In this context, "an element is 'a constituent part of a claim that must be proved for the claim to succeed.'" *United States v. Vargas–Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc) (quoting Black's Law Dictionary 538 (7th ed. 1999)). "If any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element—implicit or explicit—of the crime." *Id.* In the case where a statute has a series of disjunctive elements, "a court may look to the indictment or jury instructions, *for the limited purpose* of determining which in a series of disjunctive elements a defendant's conviction satisfies." *Dominguez*, 479 F.3d at 347 (quoting *Calderon–Pena*, 383 F.3d at 258) (emphasis in original) (internal quotation marks omitted); *see also Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (explaining that a sentencing court may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction").

Physical force in the context of § 2L1.2 requires "force capable of causing pain or injury to another person." *United States v. Flores–Gallo*, 625 F.3d 819, 823 (5th Cir. 2010) (per curiam) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)) (internal quotation marks omitted). It is "synonymous with destructive or violent force." *Dominguez*, 479 F.3d at 348

6

No. 13-40114

(quoting *United States v. Landeros–Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001)) (internal quotation marks omitted). Further, "the 'use' of force requires that a defendant intentionally avail himself of that force." *Vargas–Duran*, 356 F.3d at 599. However, the actual use of force is not necessary, as "threatened use of force is sufficient." *Dominguez*, 479 F.3d at 348.

As noted above, a defendant can be found guilty of aggravated battery under Florida law either by (1) intentionally or knowingly causing great bodily harm, permanent disability, or permanent disfigurement, or by (2) using a deadly weapon. Fla. Stat. § 784.045(1)(a) (1991). Thus, the aggravated battery statute is disjunctive. Although this court has never evaluated whether prong (1) of the aggravated battery statute constitutes a COV, in *United States v. Dominguez*, this court held that a conviction under the "deadly weapon" prong of § 784.045 is a COV. 479 F.3d at 349. In *Dominguez*, we acknowledged that under the "deadly weapon prong" of the Florida statute, "an individual could commit an aggravated battery merely by touching someone with a deadly weapon, without any resulting physical injury, and this does not qualify as a use of force." *Id.* at 348. However, this court reasoned that "the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence." *Id.*

Garcia-Figueroa contends that *Dominguez* is not controlling in this case because the charging document from his 1991 conviction does not narrow his crime to the "use of a deadly weapon" subsection but simply tracks the language of Florida Statute § 784.045. This argument, however, ignores the specificity in the charging document. In Garcia-Figueroa's case, the indictment alleges that he "did attempt to commit a battery on Lt. H. Robinson of the Bradenton Police Department and in so doing intentionally or knowingly attempted to cause great bodily harm, permanent disability, permanent disfigurement, and/or use a deadly weapon, to-wit: the firearm of

7

Lt. H. Robinson . . . ." The charging document does not mechanically restate the language of Florida Statute § 784.045 and the words of the "deadly weapon" prong; rather it identifies the particular deadly weapon that Garcia-Figueroa used in the commission of the offense—that is, "the firearm of Lt. H. Robinson." Further, looking at the judgment in Garcia-Figueroa's case, that document describes the crime of conviction as "attempted aggravated battery on [a] law enforcement officer with a law enforcement officer's firearm." By specifying that the Florida battery was done "with a law enforcement officer's firearm," the judgment also demonstrates that Garcia-Figueroa "use[d] a deadly weapon."[2]

Moreover, Garcia-Figueroa's argument only focuses on Florida Statute § 784.045, which defines aggravated battery, and ignores Florida Statute § 775.0875. Considering that statute more closely, § 775.0875 makes it a crime for a person to "without authorization, take[] a firearm from a law enforcement officer lawfully engaged in law enforcement duties." Fla. Stat. § 775.0875(1) (1991). Such an offense qualifies as a crime of violence under this court's reasoning in *Dominguez*. In *Dominguez*, the charging instrument

---

[2] Citing this court's opinion in *United States v. Neri–Hernandes*, 504 F.3d 587 (5th Cir. 2007), Garcia-Figueroa argues that the court may not rely on the judgment in his Florida case to narrow the offense of conviction to a particular prong of the aggravated battery statute. Garcia-Figueroa misconstrues *Neri–Hernandes*. In *Neri–Hernandes*, this court held that a district court could look to a New York Certificate of Disposition "to determine the nature of a prior conviction" but that the Certificate "is not conclusive and may be rebutted." 504 F.3d at 592. In so holding, *Neri–Hernandes* distinguished a New York Certificate of Disposition from a California Abstract of Judgment, which this court had previously determined could not be relied upon. The court noted that "[u]nder California law, an abstract of judgment is a clerical, rather than a judicial function" and that "the factual information on the form identifying the offense does not reflect a 'conscious judicial narrowing of the charging document.'" *Id.* at 590–91 (quoting *United States v. Gutierrez–Ramirez*, 405 F.3d 352, 358 (5th Cir. 2005)). In contrast, "[u]nder New York law, a Certificate of Disposition is a judicial record of the offense of which the defendant was convicted." *Id.* at 592. At Garcia-Figueroa's sentencing, the district court had before it the actual judgment in the Florida case, signed by the judge in that matter. Under *Neri–Hernandes*, a court may rely on a "judicial record of the offense," and thus a court is not precluded from considering the crime of conviction as defined in the judgment.

alleged that the defendant "did unlawfully and intentionally touch or strike [the victim] against his will with a deadly weapon, to-wit: a knife," in violation of the Florida aggravated battery statute, § 784.045. 479 F.3d at 347. This court explained that "[a]lthough an intentional touching with a deadly weapon under Florida law may not in itself cause injury, it could lead to more violent contact, or could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a *threatened use of force*." *Id.* at 349 (emphasis added). Similarly, "tak[ing] a firearm from a law enforcement officer lawfully engaged in law enforcement duties" may not necessarily involve the use of force, but it does create a sufficient "threatened use of force" to qualify as a crime of violence under U.S.S.G. § 2L1.2.

Accordingly, we conclude that "attempted aggravated battery on [a] law enforcement officer with a law enforcement officer's firearm" in violation of Florida Statute §§ 784.07, 777.04, and 775.0875 "has as an element the use, attempted use, or threatened use of physical force against the person of another." We need not consider whether this conviction qualifies as one of the enumerated offenses. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

Even though "attempted aggravated battery on [a] law enforcement officer with a law enforcement officer's firearm" has use of force as an element, we must additionally examine whether "attempt" under Florida law is broader than the meaning of "attempt" that applies under the Sentencing Guidelines.

In *United States v. Sanchez*, 667 F.3d 555 (5th Cir. 2012), this court set forth the framework for determining whether an attempt qualifies as a "crime of violence" for the purposes U.S.S.G. § 2L1.2. As explained in *Sanchez*, "[t]he Guidelines do not define 'attempt.'" 667 F.3d at 560. Therefore, the court "employ[s] a common-sense approach and define[s] the

term according to its generic, contemporary meaning." *Id.* (quoting *United States v. Rosas–Pulido*, 526 F.3d 829, 834 (5th Cir. 2008)). In doing so, the court "should rely on a uniform definition, regardless of the labels employed by the various States' criminal codes." *Id.* (quoting *United States v. Murillo–Lopez*, 444 F.3d 337, 339 (5th Cir. 2006)) (internal alterations omitted). If the state definition of attempt is broader than the generic definition, "a conviction under that state's law cannot serve as a predicate for the crime of violence enhancement." *Id.* (quoting *United States v. Ellis*, 564 F.3d 370, 372 (5th Cir. 2009)). To demonstrate that the state definition is broader that the generic definition, "the defendant must show more than a 'mere theoretical possibility' that the statute of conviction criminalizes conduct that does not fall within the ordinary meaning." *Id.* at 561. Rather, a defendant "must show a 'realistic probability' that the statute of conviction would in fact punish conduct outside of the offense's ordinary meaning." *Id.* To show a "realistic probability," a defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)) (internal quotation marks omitted).

The crime of attempt consists of two elements—a *mens rea* requirement and an *actus reus* requirement. *Sanchez*, 667 F.3d at 561. The requisite *mens rea* is "an intent to commit some other crime." *Id.* (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 11.3 (2d. ed. 2003)). This court has held that "the generic, contemporary *actus reus* requirement for attempt is the Model Penal Code's 'substantial step' test." *Id.* at 562. Under the substantial step test, "[a] person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the crime, he . . . purposely does or omits to do anything that, under the circumstances as

he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Model Penal Code § 5.01(1)(c); *see also Sanchez*, 667 F.3d at 562. The Model Penal Code further instructs that a substantial step must be "strongly corroborative of the actor's criminal purpose." Model Penal Code § 5.01(2); *see also Sanchez*, 667 F.3d at 562. The conduct must also "be more than 'mere preparation.'" *Sanchez*, 667 F.3d at 562 (quoting *United States v. Mandujano*, 499 F.2d 370, 377 (5th Cir. 1974)). In *Sanchez*, this court explained that "strongly corroborative" and "more than mere preparation" are two separate requirements that must both be satisfied. 667 F.3d at 562–63.

As mentioned above, Florida Statute § 777.04 defines criminal attempt as "any act toward the commission" of an offense. Fla. Stat. § 777.04(1) (1991). Comparing the Florida attempt statute to the Model Penal Code, it appears that the Florida law could criminalize conduct that fails to satisfy the substantial-step test. "Any act toward the commission" could include mere preparation. Further, there is no express requirement in the Florida statute that the act be "strongly corroborative" of the actor's criminal purpose. Under *Sanchez*, however, it is not sufficient to demonstrate a theoretical possibility that Florida criminalizes conduct outside the ordinary meaning of attempt. Rather, Garcia-Figueroa must point to specific instances where it has been so applied. To meet this burden, Garcia-Figueroa cites two cases, *Hudson v. State*, 745 So. 2d 997 (Fla. Dist. Ct. App. 1999), and *Smith v. State*, 632 So. 2d 644 (Fla. Dist. Ct. App. 1994). Neither of these cases, however, shows a realistic probability that the Florida attempt statute would in fact punish conduct outside of the offense's ordinary meaning.

In *Hudson v. State*, the defendant challenged his conviction for "an attempted lewd and lascivious act" on the grounds that the facts "[did] not demonstrate he took an overt step toward the commission of the crime." 745

So. 2d at 998–99. The defendant had placed a personal advertisement in a pornographic magazine seeking a "dreamboy" age twenty-one or under. *Id.* at 998–99. A law enforcement officer responded to the advertisement, representing himself to be a fourteen-year-old boy. *Id.* at 999. For a month and a half, the defendant exchanged sexually graphic letters with the "boy," mailed him money and pornographic magazines, and sent the "boy" photos of his apartment, urging the "boy" to live with him in Florida. *Id.* Finally, the defendant purchased and mailed a plane ticket for the "boy" and arranged for a taxi from the airport to the defendant's home. *Id.* When the taxi arrived with a law enforcement officer posing as a boy, the defendant went to the cab to greet the "boy" and was arrested. *Id.*

The Florida District Court of Appeal rejected the defendant's argument that his conduct did not constitute an overt step. The court explained that "Florida case law, in general, focuses on whether a defendant's actions were preparatory or overt." *Id.* at 1000. In *Hudson*, the court concluded that the defendant's actions had gone beyond preparation to include an overt act:

> In this case, we agree that Mr. Hudson was merely in the preparatory stages of the crime when he purchased the advertisement and wrote his initial correspondence to Larry [the "boy"]. However, thereafter he wrote numerous letters, mailed Larry a plane ticket and money for travel, arranged for a taxi to bring Larry to his house, and then approached the taxi in order to greet Larry. We conclude that under these circumstances the trial court correctly decided the information charged a crime supported by an overt act.

*Id.*

In reaching its decision, the Florida court applied the Florida attempt statute in a manner consistent with the Model Penal Code's definition of attempt. The defendant was not convicted on the grounds of "mere preparation"; rather he had taken actions properly analogous to a substantial step—writing numerous, sexually explicit letters; purchasing and mailing a plane ticket; providing money for travel; arranging transportation; and going

out to greet a boy whom the defendant believed to be fourteen years old. Furthermore, such actions are strongly corroborative of a criminal purpose to commit a lewd or lascivious act, which, under Florida law at that time, was defined as "sexual battery under § 794.011(1)(h) upon any child under 16 years." Fla. Stat. § 800.04(3) (1995); *see also Hudson*, 745 So. 2d at 998 n.1. Sexual battery, in turn, was defined as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." Fla. Stat. § 794.011(1)(h) (1995). Considering that the "more than mere preparation" and "strongly corroborative" elements were satisfied, *Hudson* fails to support Garcia-Figueroa's argument that the "attempt" under Florida law is broader than the meaning of "attempt" that applies under the Sentencing Guidelines.

The second case cited by Garcia-Figueroa is *Smith v. State*. There, the defendant was convicted on four counts of "attempting to handle, fondle, or make an assault upon a child under the age of 16 years in a lewd, lascivious or indecent manner" under Florida Statute § 800.04(1). 632 So. 2d at 645. Counts 1 and 2 were based on a December 8, 1990 incident. Two girls, ages thirteen and fourteen, were walking on the sidewalk when the defendant, driving a van, said to them "[h]ey girls, show me your pussy." *Id.* The two girls ran away, taking a back road to a church, where they sat in the sanctuary for several minutes. *Id.* The girls then walked to a fast food restaurant. *Id.* While they were there, the defendant drove up outside the restaurant and looked into the restaurant, causing the girls to hide in the restaurant's bathroom. *Id.* Counts 3 and 4 resulted from a December 20, 1990 incident. *Id.* Two girls, ages nine and ten, were walking along a sidewalk. The defendant drove by, stuck out his tongue, and "said, 'Honey, let me have some pussy,' or 'Give me your pussy.'" *Id.* The defendant circled back past the

13

girls about three more times. *Id.* The girls walked to a park to be near other people, and the defendant drove by the park. *Id.*

The Florida appellate court concluded that the facts of Counts 1 and 2 failed to establish a prima facie case against the defendant of attempting to handle, fondle, or make an assault upon a child under the age of 16 years in a lewd, lascivious or indecent manner. *Id.* The court explained that "[a]ttempt requires an overt act which is a direct movement toward the commission of the offense, and which is more than mere preparation." *Id.* at 645–46. The court determined that the defendant's statement to "show me your pussy" did not "evince the specific intent to handle, fondle, or assault the girls." *Id.* at 646. Further, the defendant's following the girls to the restaurant did not "constitute a direct movement toward a specific purpose of handling, fondling, or assaulting the girls." *Id.*

However, the Florida appellate court held that facts of Counts 3 and 4 did establish a prima facie case of attempt. According to the court, "[t]he appellant's command to the girls to 'give [him] some pussy' demonstrates the specific desire to handle or fondle the girls, and the appellant's act of repeatedly driving back by the girls can properly be viewed as a direct act in furtherance of this specific intent." *Id.* (alteration in original).

As in *Hudson*, the *Smith* court applied the Florida attempt law in a manner consistent with the generic meaning of attempt. The court evaluated whether the defendant made a direct movement that was more than mere preparation. Further, the court analyzed whether that movement furthered the defendant's "specific desire to handle or fondle the girls"—that is, whether the movement was corroborative of his criminal purpose. Considering that the "more than mere preparation" and "strongly corroborative" elements were satisfied, *Smith* also fails to support Garcia-

Figueroa's argument that "attempt" under Florida law is broader than the meaning of "attempt" that applies under the Sentencing Guidelines.

Under *Sanchez*, in order to demonstrate that Florida's attempt statute is overly broad, Garcia-Figueroa is required to point to cases in which the Florida courts applied the attempt statute in a nongeneric manner. The two cases cited by Garcia-Figueroa—*Hudson* and *Smith*—are inapplicable; in both cases, the Florida courts applied a definition of attempt consistent with the Model Penal Code's substantial step test. Accordingly, Garcia-Figueroa has failed to demonstrate that "attempt" under Florida law is broader than "attempt" under the Sentencing Guidelines.

Concluding that "attempted aggravated battery on [a] law enforcement officer with a law enforcement officer's firearm" has the use of force as an element, and that attempt under Florida law is not broader than the generic definition of attempt, we hold that Garcia-Figueroa's conviction qualifies as a COV and that the district court did not err in assigning a 12-level enhancement.

## II.

Second, Garcia-Figueroa contends that the district court erred in not grouping Count 3 with Count 1 and 2. We review the district court's grouping *de novo*. *United States v. Lopez–Urbina*, 434 F.3d 750, 762 (5th Cir. 2005).

U.S.S.G. § 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." "In essence, counts that are grouped together are treated as constituting a single offense for the purposes of the guidelines." U.S.S.G. ch. 3, pt. D, introductory cmt. (2013); *see also United States v. Simmons*, 649 F.3d 301, 303 (5th Cir. 2011) (quoting the introductory comment). Counts involve substantially the same harm in four instances:

(a)    When counts involve the same victim and the same act or transaction.

(b)     When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c)     When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d)     When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2. As this court noted in *United States v. Lopez–Urbina*, the use of the word "shall" in § 3D1.2 "indicates that Congress intended the grouping to be mandatory if the appropriate requirements are met." 434 F.3d at 764.

Garcia-Figueroa argues that the district court should not have grouped Counts 1 and 2 (conspiracy to bring illegal aliens into the United States and bringing illegal aliens into the United States) separately from Count 3 (illegal reentry). According to Garcia-Figueroa, the trial testimony demonstrates that he was found illegally in the United States during and in connection with the offense of bringing unlawful aliens across the Rio Grande and into the United States. Further, he characterizes all three offenses as immigration crimes not involving any victim. In opposition to Garcia-Figueroa, the Government contends that notwithstanding the fact that the offenses occurred on the same day and may be considered part of a single transaction, there were identifiable victims directly affected by Counts 1 and 2—that is, the aliens Garcia-Figueroa smuggled.

It appears uncontested by the parties that the conspiracy and alien smuggling offenses were part of the same transaction as the illegal reentry, and based on the facts established at trial, Garcia-Figueroa illegally

reentered the United States in the course of his smuggling illegal aliens on June 5, 2012. Thus, the question becomes whether the conspiracy and alien smuggling offenses involve the same victim as the illegal reentry offense.

For the purposes of § 3D1.2, the term "victim" does not include "indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim." U.S.S.G. § 3D1.2 cmt. n.2. In the context of immigration offenses, the application notes indicate that the "victim" is the societal "interest[] protected by laws governing immigration":

> For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related.

U.S.S.G. § 3D1.2 cmt. n.2. A plain reading of the application notes indicates that the victim of immigration offenses is the societal interest, and thus immigration offenses should generally be grouped together if they are part of the same transaction, as is the case here.

In support of its position that separate grouping is appropriate because the smuggled aliens are "victims" of Counts 1 and 2, the Government cites to *United States v. Garcia–Gonzalez*, 714 F.3d 306 (5th Cir. 2013). In *Garcia–Gonzalez*, the defendant illegally transported four girls under the age of eighteen from Honduras to the United States. *Id.* at 311. Once the girls were in the United States, the defendant forced them to work at his restaurant and bar in order to satisfy their $4,500 smuggling debt. *Id.* As part of their job, the girls were required to drink and have sex with customers. *Id.* The defendant never paid the girls, and instead applied their earnings to their

purported smuggling debts. *Id.* The defendant was charged and convicted on three counts of child sex trafficking, one count of conspiring to harbor illegal aliens, and six counts of alien harboring. *Id.* At sentencing, the district court grouped the sex trafficking counts separately from the conspiracy and alien harboring counts. *See id.* at 317. This court affirmed, noting that the ten counts involved multiple victims. *Id.* (applying plain-error review because the defendant failed to raise a grouping objection at the district court level).

*Garcia–Gonzalez* does not stand for the proposition that illegal reentry and alien smuggling involve different victims; rather, it demonstrates that child sex trafficking and alien harboring involve different victims. Importantly, child sex trafficking is not an immigration offense, as the relevant statute is found in Title 18 of the United States Code, entitled "Crimes and Criminal Procedure." *See* 18 U.S.C. § 1591. Alien harboring is an immigration offense addressed in Title 8, entitled "Aliens and Nationality." *See* 8 U.S.C. § 1324. All three of Garcia-Figueroa's counts involve offenses codified in Title 8. Furthermore, while the children in *Garcia–Gonzalez* were clearly victimized, it is harder to characterize the aliens smuggled by Garcia-Figueroa as victims. The raft may have been overcrowded, but there was no evidence of coercion or exploitation of the unlawful aliens in the raft.

Considering that alien smuggling and illegal reentry are both immigration crimes, which the application notes describe as having a common victim, and that the alien smuggling and illegal reentry were part of the same transaction—that is, the June 5, 2012 river crossing, we hold that Counts 1, 2, and 3 should have been grouped together.

No. 13-40114

## III.

If the district court has misapplied the Sentencing Guidelines, then this court must determine whether remand is appropriate. Improperly calculating a defendant's Guidelines range is a procedural error. *Gall v. United States*, 552, U.S. 38, 51 (2007). However, "not every procedural error will require outright reversal," and "certain 'harmless' errors do not warrant reversal." *United States v. Delgado–Martinez*, 564 F.3d 750, 752 (5th Cir. 2009). "A procedural error during sentencing is harmless if 'the error did not affect the district court's selection of the sentence imposed.'" *Id.* at 753 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). The party seeking to uphold the sentence has the burden of establishing that an error is harmless. *Id.* That is, "[t]he proponent of the sentence 'must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made in arriving at the defendant's guideline range.'" *Id.* (quoting *United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998)).

Grouping the conspiracy and smuggling offenses separately from the illegal entry offense resulted in a 2-level increase to Garcia-Figueroa's offense level pursuant to U.S.S.G. § 3D1.4. Without this error, Garcia-Figueroa's Guidelines range would have been 51–63 months rather than 63–78 months; Garcia-Figueroa was ultimately sentenced to 70 months. Although the Government argues that if the offenses had been grouped together, circumstances would probably have warranted an upward departure, this conclusory suggestion does not demonstrate that the district court had a particular sentence in mind and would have imposed it notwithstanding the grouping error. Looking at the sentencing transcript, it appears that the district court's sentence was strongly grounded in the erroneously calculated Guidelines range, as the district court stated on the record that "the Court

No. 13-40114

considers those factors under 18 U.S.C. 3553(a) and concludes that a sentence within these guidelines satisfies them." Therefore, we hold that the grouping error was not harmless.

## CONCLUSION

For the foregoing reasons, Garcia-Figueroa's sentence is VACATED and the matter is REMANDED to the district court for resentencing.